IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| LOUISE GRAVES, by and through CHUCK GRAVES, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   No. 1:22-cv-02296-STA-jay ) |
| AUTO OWNERS INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
AND DENYING DISCOVERY MOTIONS AS MOOT**

Plaintiff Louise Graves, by and through Chuck Graves, filed this action against Defendant Auto Owners Insurance Company for the alleged breach of an insurance contract. The lawsuit was filed in the Circuit Court of Gibson County, Tennessee, and was removed to this Court by Defendant with jurisdiction predicated on 28 U.S.C. § 1332, diversity of citizenship. Defendant has filed a motion for summary judgment (ECF No. 67), and Plaintiff has filed a response to the motion. (ECF No. 84.) Plaintiff has filed a cross motion for partial summary judgment (ECF No. 69), and Defendant has filed a response to Plaintiff's motion. (ECF No. 80.) For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion is **DENIED**.

This matter has presented multiple discovery issues, including Defendant's motion for sanctions in the form of dismissal for failure to comply with discovery deadlines. (ECF No. 47.) The Magistrate Judge has issued a report recommending that Defendant's motion for sanctions be granted. (ECF No. 55.) Plaintiff has appealed the decision. (ECF No. 60.) Defendant's motion to compel (ECF No. 61) and motion to exclude expert opinion testimony (ECF No. 66) are also

pending. Because the Court has decided the issues presented in this case on the merits, the discovery motions are **DENIED** as moot.

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court must review all the evidence and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Statement of Undisputed Material Facts

Pursuant to Local Rule 56.1, the parties have submitted the following statements of facts (Def's St. of Mat. Facts, ECF No. 68-2; Pl's Resp. to St. of Mat. Facts, ECF No. 84-3; Pl's St. of Mat. Facts, ECF No. 69-1; Def's Resp. to St. of Mat. Facts, ECF No. 80-1), which are undisputed unless otherwise noted. Additionally, Defendant's requests for admissions (ECF No. 67-5) have been deemed admitted. (ECF No. 88.)

Auto-Owners issued homeowners policy number 724619-03630939-19 to Louise Graves. A certified copy of the Policy is attached to Defendant's motion as Exhibit A. (ECF Nos. 67-3, 68-1.) Mrs. Graves purchased the policy to insure the property from damage or loss in exchange for valuable consideration.[1]

A claim was filed with Auto-Owners for a loss on or about May 4, 2020, and was identified as claim number 300-0219080-2020. This lawsuit was filed on April 11, 2022, as the result of a dispute over the May 4, 2020 claim.

On March 2, 2021, Mrs. Graves submitted to an Examination Under Oath pursuant to the terms of the policy. Under oath, Mrs. Graves provided sworn testimony regarding the status and ownership of the property insured under the policy and located at 3523 Eastend Drive, Humboldt, Tennessee 38343. During the Examination Under Oath, Mrs. Graves swore that the insured property was sold in December 2020. Also during the Examination Under Oath, Mrs. Graves swore

---

[1] Defendant has set out the provisions of the policy in its statement of facts. Plaintiff objects to this, even though the provisions are set out exactly as stated in the policy. (ECF No. 84-2.) Because of Plaintiff's objections, the Court has looked at the policy itself (ECF Nos. 67-3, 68-1) in making its decision.

3

that she was not aware that she executed an Assignment of Claim assigning the rights of the insurance claim in the sale of the property at 3523 Eastend Drive, Humboldt, Tennessee 38343.

On September 16, 2020, Mrs. Graves made a demand for appraisal pursuant to policy number 724619-03630939-19. On December 21, 2020, Mrs. Graves submitted a proof of loss with actual cash value of $476,761.95. The parties engaged in the contractual appraisal process. An appraisal award was entered on March 8, 2021. The appraisal award set the amount of loss at replacement cost $490,045.13 and actual cash value $461,300.79.

The appraisal report upon which the appraisal award is based includes line items and/or costs related to ordinance or law coverage as part of the actual cash value. The ordinance or law line items and/or costs were included in the appraisal report for the purpose of compliance with an ordinance or law regulating construction of property insured under an insurance policy.

The loss or damage at issue in this litigation was not repaired either before or after March 8, 2021. Auto-Owners issued payment to Mrs. Graves for the appraisal award less the amounts listed in the appraisal award representing replacement cost coverage and ordinance or law coverage. Auto-Owners issued payment to Mrs. Graves under claim number 300-021900-2020 in the amount of $186,822.78 less the policy's $1,000.00 deductible. [2]

In its response to Plaintiff's statement of facts (ECF No. 69-1), Defendant submitted the following additional facts to which Plaintiff has not responded. (ECF 80-1.) Therefore, the Court has considered these facts to be undisputed.

The appraisal report includes the cost of complying with the 2015 IECC Commercial Scope and Envelope Requirements, as listed in line item #2 of the appraisal report; the cost of complying

---

[2] Although Plaintiff disputes that this was the amount due on the claim, she does not dispute that this was the amount paid by Auto-Owners.

with the "Gibson County Building Code: (2015 International Residential Code)," as listed in line item #161 on page 13 of the appraisal report; the cost of complying with the "Gibson County Building Code: (2015 International Residential Code)," as listed in line item #165 on page 13 of the appraisal report; and the cost of compliance with the "2015 International Residential Code," as listed in line item #166 on page 13 of the appraisal report. (Def's Add Facts ¶ 7 -10, ECF No. 80-1.) The appraisal report includes multiple costs or line items related to ordinance or law coverage of Policy No. 724619-03630939-19. (*Id.* ¶ 11.)

The policy issued to Mrs. Graves provided coverage only in accordance with the policy terms and conditions for the policy period of September 01, 2019, to September 01, 2020. (*Id.* ¶ 14.)

Defendant's requests for admissions which have been deemed admitted (ECF No. 88) reiterate and/or add that Mrs. Graves sold the property before March 8, 2021, the insurance claim was not assigned by Mrs. Graves, a suggestion of death as to Mrs. Graves was not filed in the Gibson County Circuit Court, the loss or damage at issue in this litigation was not repaired prior to the sale of the property, a motion for substitution of a party was not timely filed in the Gibson County Circuit Court, a replacement cost claim was not submitted to Defendant, the March 8, 2021 appraisal award included an itemized estimate, the appraisal award estimate included a scope of repairs, and the appraisal award estimate scope of repairs was not completed. (ECF No. 56-1.)

Defendant has provided a certified copy of the insurance policy at issue (ECF Nos. 67-3, 68-1) which provides as follows:

> BUILDING AND PERSONAL PROPERTY
> COVERAGE FORM
>
> *****
>
> A. COVERAGE

5

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1. Covered Property
>
> Covered Property, as used in this Coverage Part, means the type of property described in Section A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
>
> a. Building, meaning the building or structure described in the Declarations ….
>
> *****
>
> 3. Covered Causes of Loss
> See applicable Causes of Loss Form as shown in the Declarations.

(*Id.* pp. 57-58.)

> CAUSES OF LOSS – SPECIAL FORM
>
> *****
>
> A. COVERED CAUSES OF LOSS
>
> When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:
>
> 1. Excluded in Section B., Exclusions; or
>
> 2. Limited in Section C., Limitations that follow.
>
> B. EXCLUSIONS
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> a. Ordinance Or Law
>
> The enforcement of any ordinance or law:
>
> (1) Regulating the construction, use or repair of any property; or

> (2) Requiring the tearing down of any property, including the cost of removing its debris.
>
> This exclusion, Ordinance Or Law, applies whether the loss results from:
>
> (a) An ordinance or law that is enforced even if the property has not been damaged; or
>
> (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

(*Id.* p. 80.)

> E. LOSS CONDITIONS
>
> The following conditions apply in addition to the Common Policy conditions and the Commercial Property Conditions.
>
> \*\*\*\*\*
>
> 2. Appraisal
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.
>
> \*\*\*\*\*
>
> 4. Loss Payment

> a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>
> (1) Pay the value of lost or damaged property;
>
> (2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
>
> (3) Take all or any part of the property at an agreed or appraised value; or
>
> (4) Repair, rebuild or replace the property with property of like kind and quality, subject to b. below.
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
>
> b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.
>
> \*\*\*\*\*
>
> d. We will not pay you more than your financial interest in the Covered Property.
>
> \*\*\*\*\*
>
> g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:
> (1) We have reach agreement with you on the amount of loss; or
> (2) An appraisal award has been made.
>
> \*\*\*\*\*
>
> 7. Valuation
>
> We will determine the value of Covered Property in the
> event of loss or damage as follows:
> a. At actual cash value as of the time of the loss or
> damage, except as provided in b., c., d. and e.
> below.

(*Id.* pp. 65-67.)

*****

G.  OPTIONAL COVERAGES

*****

**3. Replacement Cost**

*****

d. We will not pay on a replacement cost basis for any loss or damage:

(1) until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

*****

f.  The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair any property.

(*Id.* p. 69.)

ORDINANCE OR LAW COVERAGE

*****

A. Each Coverage – Coverage A, Coverage B, Coverage C and Coverage D – of Section E. Coverages below, is provided under this endorsement only if a Limit of Insurance for that Coverage(s) is shown in the declairations and then only with respect to the building identified for that Coverage(s) in the Declarations.

B. The following provisions do not apply to the extent that they conflict with the coverage provided by this endorsement only:

1. BUILDING AND PERSONAL PROPERTY COVERAGE FORM:
   a.      E. LOSS CONDITIONS:
         (1) 4. Loss Payment, b.; and
         (2) 7. Valuation, b., second paragraph; and

b. G. OPTIONAL COVERAGES, 3. Replacement Cost, f.

*****

    3. Section B. EXCLUSIONS, 1.a. of CAUSES OF
LOSS – SPECIAL, BROAD and BASIC FORMS.

\*\*\*\*\*

    E. COVERAGES

\*\*\*\*\*

    3. Coverage C – Increased Cost Of Construction Coverage

    a. With respect to a covered building that has sustained covered direct physical
damage, we will pay the increased cost to:
        (1) Repair or reconstruct damaged portions of that building; and/or
        (2) Reconstruct or remodel undamaged portions of that building, whether
        or not demolition is required
    when the increased cost is a consequence of enforcement of the minimum
requirements of the ordinance or law.

    However:
    (1) This coverage applies only if the restored or remodeled property is
intended for similar occupancy as the current property, unless such
occupancy is not permitted by zoning or land use ordinance or law.
    (2) We will not pay for the increased cost of construction if the building is
not repaired, reconstructed or remodeled.

(*Id.* pp. 89-90.)

<u>Analysis</u>

    Defendant has provided a summary of the background of this case, which Plaintiff has not disputed. A storm event on May 4, 2020, resulted in a loss to property owned by Plaintiff, insured by Defendant, and located at 3523 Eastend Drive, Humboldt, Tennessee 38343. A claim was filed with Defendant who investigated the claim and issued payment for what it determined to be covered damage. After issuing payment, Mrs. Graves, the property owner and insured, demanded appraisal under the insurance policy. Before an appraisal award was entered, Mrs. Graves sold the property.

Defendant withheld funds from the appraisal award payment on the grounds that (1) Mrs. Graves could not repair the property and collect the cost of depreciation and replacement because she no longer owned the property and (2) the increased cost of construction as a result of enforcement of an ordinance or law regulating the repair of damage to property was not provided for under the terms of the policy. Plaintiff contends that the full appraisal amount is binding and that any reduction in the award amount for the increased cost of construction as a result of enforcement of an ordinance or law is void as being against public policy.

The Court has subject-matter jurisdiction in this case by virtue of the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). In contract cases, Tennessee follows the rule of *lex loci contractus*, meaning that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent" such as a valid contractual choice-of-law provision. *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). Because this case does not present any evidence of "a contrary intent," the Court will apply Tennessee law.

The Tennessee Supreme Court has held that "[i]nsurance policies are, at their core, contracts." *Garrison v. Bickford*, 377 S.W.3d 659, 663–64 (Tenn. 2012) (citation omitted). Courts construing the terms of a contract ascertain the intent of the parties based on the ordinary and natural meaning of the words used in the instrument. *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 85 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008). Although Plaintiff argues otherwise, the Court finds that the terms of the Policy in this case are clear and unambiguous and "the

ordinary and natural meaning of the words used" in the insurance contract fully support Defendant's position.

The ultimate issue presented in the cross motions for summary judgment is whether Defendant is bound by the appraisal award which set the amount of loss at a replacement cost of $490,045.13 and an actual cash value of $461,300.79 or whether Defendant is responsible for the appraisal amount less prior payments and the amounts listed in the appraisal award representing replacement cost coverage and ordinance or law coverage.

It is well-established that an "appraiser's authority is limited to the authority granted in the insurance policy or granted by some other express agreement of the parties."[3] *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 217 (Tenn. Ct. App. 2013) (*citing Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 152 (Tenn. Ct. App. 2001)).  In the present case, the policy expressly states that Defendant will not pay on a replacement cost basis or for the increased cost of construction resulting from enforcement of an ordinance or law regulating the repair of construction of any property <u>unless</u> the damaged property is actually repaired or replaced.[4] Mrs. Graves sold the property prior to its being repaired and did not assign her claim to anyone, according to her sworn testimony. Therefore, Defendant has satisfied its obligations under the insurance policy by making its payments based on the appraisal award, excluding the amounts that

---

[3] Even though an appraisal award was entered, Auto-Owners retained its right to deny the claim or any portion of the claim under the terms of the policy. (Policy p. 65, ECF No. 67-3.)
[4] Defendant acknowledges that the policy initially excludes all claims for ordinance or law coverage but points out that the policy later provides this coverage, subject to all remaining terms and provisions of the policy. One of those provisions is that, in order to be eligible to recover any increased costs of construction under the ordinance or law coverage, the Property must be repaired or replaced. (Policy p. 90, ECF No. 67-3.) It is undisputed that the Property was not repaired or replaced by Mrs. Graves and could not be repaired or replaced by her because she sold the Property prior to any repairs.

Plaintiff cannot recover under the policy because she failed to satisfy all the terms and conditions of the policy.

Plaintiff has not addressed the portion of Defendant's motion setting out Mrs. Graves' duty to repair and/or replace the Property before being entitled to ordinance and law coverage and, instead, focuses on whether the ordinance and law clause of the policy is unenforceable as against Tennessee public policy or is ambiguous. (Pl's Resp. p. 1, ECF No. 84-1.) While it is true that contracts may be void as being against Tennessee public policy, *Baugh v. Novak*, 340 S.W.3d 372, 382 (Tenn. 2011) ("The authority 'of the courts to invalidate the bargains of parties on grounds of public policy is unquestioned and is clearly necessary.'" (quoting 5 Samuel Williston, *Treatise on the Law of Contracts* § 12:3, at 858 (Richard A. Lord ed., 4th ed. 2009)), the Court need not reach this issue because, under the clear terms of the policy, the ordinance and law coverage only came into play if the property was repaired or replaced. Clearly it was not, and Defendant is entitled to judgment as a matter of law.

The Court finds that the undisputed facts show that the property at issue in this litigation was sold by Mrs. Graves before any repairs began, and Defendant has paid all the amounts owed under the terms of the policy. Thus, Defendant has no further obligation to Plaintiff arising out of the appraisal award. Accordingly, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion for partial summary judgment is **DENIED**.  Any other pending motions are **DENIED** as moot. Judgment will be entered for Defendant.

IT IS SO ORDERED.

s/ S. Thomas Anderson
S. Thomas Anderson
United States District Judge

Date:   August 9, 2023.
